# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **JUDY LYNN BARFIELD,** )<br>    **Plaintiff,** )<br> )<br>**v.** )<br> )<br>**KILOLO KIJAKAZI,** *Acting* )<br>*Commissioner of Social Security*,[1] )<br>    **Defendant.** ) | **CIVIL ACTION NO. 1:20-00409-N** |

## MEMORANDUM OPINION AND ORDER

Plaintiff Judy Lynn Barfield brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her application for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*[2] Upon due consideration of the parties' briefs (Docs. 14, 16) and those portions of the certified transcript of the administrative record (Doc. 12) relevant to the issues

---

[1] As has been called to the Court's attention in other cases, Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. *See* https://www.ssa.gov/org/coss.htm; https://www.reuters.com/world/us/biden-fires-social-security-commissioner-2021-07-09/ (last visited Mar. 30, 2022). Accordingly, Kijakazi is automatically substituted for Andrew Saul as the defendant in this action under Federal Rule of Civil Procedure 25(d), and this action continues unabated. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the title and docket of this case accordingly.

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).

raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[3]

## I.   *Procedural Background*

Barfield filed the subject DIB application with the Social Security Administration ("SSA") on April 10, 2018. After it was initially denied, Barfield requested, and on September 5, 2019, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On October 31, 2019, the ALJ issued an unfavorable decision on Barfield's application, finding her not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 12, PageID.71-88).

The Commissioner's decision on Barfield's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's unfavorable decision on June 24, 2020. (*Id.*, PageID.49-54). Barfield subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the

---

[3]     With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings in this civil action, order the entry of final judgment, and conduct all post-judgment proceedings, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 19, 20).
        With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 18, 21).

mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the

facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[5]

---

court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished) ("The question is not, as Werner suggests, whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." (footnote omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[5] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409,

_____

129 S. Ct. 1696, 173 L.Ed.2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275,

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court

---

1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue').""); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921

(11th Cir. 2019) (per curiam) (unpublished)[6] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB requires a showing that the claimant is under a disability, 42 U.S.C. § 423(a)(1)(E), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full

and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new

evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.    *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Barfield last met the applicable insured status requirements on September 30, 2014, and that she had not engaged in substantial gainful activity since the alleged disability onset date of October 14, 2013.[8] (Doc. 12, PageID.76). At Step Two,[9] the ALJ determined that, through the date last insured, Barfield had the following severe impairment: degenerative disc disease

---

[8] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211.

[9] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.'" (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.'" *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

of the lumbar spine. (Doc. 12, PageID.76). At Step Three,[10] the ALJ found that, through the date last insured, Barfield did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 12, PageID.76-77).

At Step Four,[11] the ALJ determined that, through the date last insured,

---

[10] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

[11] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

Barfield had the residual functional capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b)[12], except that she can stand and walk for four hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ladders, ropes, and scaffolds; occasionally stoop, crawl, and crouch; frequently climb ramps and stairs; frequently kneel; and must avoid work at unprotected heights." (Doc. 12, PageID.77-83). Based on the RFC and the testimony of a vocational expert,[13]

---

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[12] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[13] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy."

the ALJ found that, through the date last insured, Barfield was capable of performing past relevant work as a billing clerk and order clerk. (Doc. 12, PageID.83). Thus, the ALJ found that Barfield was not under a disability as defined by the Social Security Act from the disability onset date through the date last insured. (*Id.*, PageID.83-84).

### IV.   *Analysis*

### a.    **Dr. Barfield**

Barfield first argues that the ALJ reversibly erred in failing to address the medical opinion of one of her treating physicians, Matthew Barfield, D.O. [14] In response, the Commissioner argues that Dr. Barfield did not provide a "medical opinion" as that term is defined by the regulations applicable to Barfield's present application. The undersigned agrees with the Commissioner.

Barfield concedes that "the ALJ's decision references and summarizes the treatment by Dr. Barfield, with Comprehensive Pain & Rehabilitation, between November 22, 2013 and July 22, 2014…" (Doc. 15, PageID.764). However, she argues that the ALJ failed to "identify the weight" afforded to Dr. Barfield's statement that "Barfield's level of pain was severe, consistent with a level of 7-8 of 10" (*id.*, PageID.765), which she contends is a medical opinion the ALJ was expressly required to address.

---

*Phillips*, 357 F.3d at 1240.

[14] Barfield affirmed at the ALJ hearing that she is not related to Dr. Barfield. (Doc. 12, PageID.125-126).

The Social Security regulations applicable to Barfield's application[15] define "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: … (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2). Dr. Barfield's bare statement about the severity of Barfield's pain does not provide any such information.[16] Therefore, the ALJ did not err in failing to

---

[15] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). The rules for evaluating medical opinions found in 20 C.F.R. § 404.1520c apply to DIB claims filed on or after March 27, 2017, such as Barfield's. *Compare* 20 C.F.R. § 404.1520c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017). The revisions also changed what constitutes a "medical opinion." *See* 20 C.F.R. § 404.1513(a)(2) (defining "medical opinion" while specifying that "the definition of medical opinion" found in § 404.1527 applies to claims filed before March 27, 2017).

[16] Dr. Barfield's statement may have qualified as a medical opinion under the regulations applicable to claims filed before March 27, 2017, which define medical

address it as such.

### b.   Dr. Wiggins

Barfield also argues the ALJ erred in finding unpersuasive the medical opinion of treating physician Chris Wiggins, M.D. No reversible error has been shown.

Under the Social Security regulations applicable to Barfield's application, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …, including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).[17] "When a medical source provides one or more medical opinions or prior administrative medical findings, [the Commissioner] will consider those medical opinions … from that medical source together using [the following] factors[,]" *id.*: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c).

"The most important factors … are supportability … and consistency…" 20 C.F.R. § 404.1520c(a). *Accord* 20 C.F.R. § 404.1520c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency"

---

opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

[17] Thus, Barfield is wrong to argue that the ALJ was required to "identify the weight" given to medical opinions.

means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors … when … articulat[ing] how [the Commissioner] consider[ed] medical opinions and prior administrative medical findings in [the] case record[,]" *id.*, unless the Commissioner "find[s] that two or more medical opinions … about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same…" *Id.* § 404.1520c(b)(3).

Under the regulations applicable to claims filed before March 27, 2017, the medical opinion of a treating physician could be entitled to "controlling weight" in certain circumstances. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, the 2017 revisions "removed the 'controlling weight' requirement for all applications filed after March 27, 2017." *Yanes v. Comm'r, Soc. Sec. Admin.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021) (per curiam) (unpublished).[18]

---

[18]    In *Simon v. Commissioner, Social Security Administration*, 1 F.4th 908 (11th Cir. June 9, 2021) ("*Simon I*"), a panel of the Eleventh Circuit acknowledged, in footnote four of its opinion, that "[t]he SSA amended its rules in 2017 to remove th[e]

Barfield specifically argues that "the ALJ erred in rejecting the opinions of Dr. Wiggins that [she] was unable to work between November 12, 2013 and November 3, 2014 and had a limitation to lifting no more than 1-2 lbs. on a frequent basis after November 3, 2014." (Doc. 15, PageID.773 (record citations omitted)). These opinions are found in two "Work Excuse/Release/Restrictions" letters Dr. Wiggins issued, one dated November 12, 2013, and the other November 3, 2014 (Doc. 12, PageID.700-701). The ALJ found those opinions unpersuasive except to the extent consistent with

---

'controlling weight' requirement" for treating physicians. 1 F.4th at 918 n.4 (citing 20 C.F.R. § 404.1520c). However, the panel also noted that "the current version of the regulation still instructs an ALJ to weigh all medical opinions in light of the '[l]ength of the treatment relationship,' the '[f]requency of examinations,' the '[p]urpose of the treatment relationship,' and the '[e]xtent of the treatment relationship.' " *Id.* (quoting 20 C.F.R. § 404.1520c). The panel thus concluded that "[t]hese factors continue to indicate the importance of treating physicians' opinions—especially where the physician has maintained a longstanding and consistent relationship with the claimant." *Id.*

That conclusion regarding the new rules, however, was dicta, as *Simon I* concerned a DIB application filed in 2015, and thus the old rules concerning treating physicians clearly applied to it. Moreover, even that dicta appears to have been reconsidered, as the *Simon I* panel subsequently withdrew its opinion and replaced it with a new one on August 12, 2021. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 ("*Simon II*"). In *Simon II*, footnote four was revised to state, in full: "The [treating source 'controlling weight'] regulation … only applies to disability claims that were filed before March 27, 2017. Claims filed after that date are governed by a new regulation prescribing a somewhat different framework for evaluating medical opinions. *See* 20 C.F.R. § 404.1520c. Because Simon filed his claim in March of 2015, we need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise." *Id.* at 1104. And more recently, a panel of the Eleventh Circuit, albeit in an unpublished decision, held that the regulatory scheme applicable to claims filed on or after March 27, 2017, "no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion." *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) (per curiam) (unpublished).

the determined RFC, explaining:

> The claimant had the capacity to perform a range of light exertion during the period for consideration, including the lifting and/or carrying requirements of light exertion, and that the objective treatment record, including examination findings and diagnostic imaging, did not support the extreme limitation of lifting one to two pounds frequently. Further, the undersigned emphasizes that the functional capacity evaluation findings were made in conjunction with the claimant's pending worker's compensation case.

(Doc. 12, PageID.81-82).

Barfield incorrectly argues that the ALJ rejected those opinions by finding they were "speculative and did not indicate that his statements specifically applied to the time period in question." (Doc. 15, PageID.773). That reasoning was given to reject other opinions by Dr. Wiggins stated in a deposition transcript. (*See* Doc. 12, PageID.81).[19] Barfield has not challenged the ALJ's rejection of those opinions, and indeed even agrees that the ALJ properly rejected one of them (*see* Doc. 15, PageID.773).

As the Commissioner correctly points out, with regard to Dr. Wiggins's opinion that Barfield unable to work between November 12, 2013 and November 3, 2014, statements that a claimant is "not disabled, blind, able to work, or able to perform regular or continuing work" are "statements on issues reserved to the Commissioner"

---

[19] While Dr. Wiggins was asked about the two "Work Excuse/Release/Restrictions" letters in his deposition testimony, he only addressed them to clarify that they were related to Barfield's injury that was the subject of her worker's compensation claim. (Doc. 12, PagID.490). Regardless, the ALJ's decision makes clear that she did not consider the opinions given in the "Work Excuse/Release/Restrictions" letters to be part of the deposition testimony, and instead addressed those opinions separately from the others in the deposition transcript. (*See* Doc. 12, PageID.81).

that are "inherently neither valuable nor persuasive[,]" and an ALJ need "not provide any analysis about how [he or she] considered such evidence[,]" even when the statement is in a medical opinion. 20 C.F.R. § 404.1520b(c)(3)(i). Moreover, it is reasonably apparent from the portion of the ALJ's decision quoted above that she found Dr. Wiggins's opinions in the two "Work Excuse/Release/Restrictions" letters unpersuasive because they were not consistent with the other evidence of record. Prior to addressing these opinions, the ALJ's decision provided a thorough summary of the record evidence, and Barfield has given the undersigned no reason to question the ALJ's view of the record as a whole.[20] As for the ALJ's observation that those opinions were made in conjunction with Barfield's worker's compensation case, it is not inappropriate for an ALJ to consider that a medical opinion was made in a context other than seeking Social Security disability benefits, *cf.* 20 C.F.R. § 404.1520c(c)(5) ("We will consider other factors that tend to support or contradict a medical opinion..., [including] evidence showing a medical source has ... an understanding of our disability program's policies and evidentiary requirements."); regardless, the ALJ made clear that she based her decision primarily on the "most important" factors of consistency and supportability, and that the context in which Dr. Wiggins's opinions were given was simply an additional consideration. Accordingly, Barfield has shown no reversible error in the ALJ's consideration of Dr. Wiggins's opinions.

---

[20] Barfield argues that Dr. Wiggins's opinions are supported by the functional capacity evaluation (FCE) given by occupational therapist Cindy Powell. The ALJ discussed Powell's FCE but found her conclusions "not ... persuasive" (Doc. 12, PageID.81), a finding that Barfield does not address.

### c.    RFC

Finally, Barfield argues that the ALJ reversibly "erred in failing to find [her] limited to no more than unskilled work as a result of her pain and medication side effects." (Doc. 15, PageID.770). Limiting her to unskilled work in the RFC, she argues, would have precluded the ALJ's finding at Step Four that she could perform her semi-skilled past relevant work. Barfield primarily argues that her subjective complains regarding her pain and other symptoms support such a limitation.

> In determining whether [a claimant is] disabled, [the Commissioner] will consider all [a claimant's] symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The Commissioner] will consider all of [a claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [his or her] activities of daily living and … ability to work. However, statements about … pain or other symptoms will not alone establish that [a claimant is] disabled. There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of … pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled. In evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the Commissioner] will consider all of the available evidence, including … medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]. [The Commissioner] will then determine the extent to which [the] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work.

20 C.F.R. § 404.1529(a). "If a claimant testifies as to his subjective complaints of disabling pain and other symptoms, ... the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

Barfield concedes that the ALJ stated reasons for discrediting her subjective testimony, but argues that they are not supported by substantial evidence. However, even considering at face value the subjective testimony and objective evidence Barfield cites in support of this argument in her brief, she largely fails to explain how most of it supports a limitation to unskilled work, much less how it clearly contradicts the ALJ's RFC. *Cf. Sims*, 706 F. App'x at 604 ("Under a substantial evidence standard of review, Sims must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). It does not matter that a different result could have been reached based upon the record. The Court cannot decide the facts anew, reweigh the evidence, or substitute its judgment for the ALJ's, *Winschel*, 631 F.3d at 1178, and "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence[,]" *Barnes*, 932 F.2d at 1358, an evidentiary burden that "is not high." *Biestek*, 139 S. Ct. at 1154. "The question is not ... whether ALJ could have credited [her] testimony, but whether the

ALJ was clearly wrong to discredit it." *Werner*, 421 F. App'x at 939. *See also Sims*, 706 F. App'x at 604 ("Under a substantial evidence standard of review, Sims must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.").

Barfield's clearest argument on this point is her assertion that Dr. Barfield's finding she "consistently had pain in the range of 7-8/10, despite medications and treatments, is inconsistent with the ALJ's finding that [she] retains the ability to sustain concentration, persistence and pace to meet the demands of full-time semi-skilled work." (Doc. 15, PageID.766).[21] Barfield cites no authority in support of this conclusory statement. Regardless, the ALJ noted that Barfield affirmed her ability to "complete activities of daily living" in spite of her pain at multiple visits with Dr. Barfield, indicating some ability to sustain concentration, persistence and pace. *See* (Doc. 12, PageID.79 (discussing such notations in treatment notes from December 11, 2013, January 8, 2014, and February 5, 2014)); 20 C.F.R. § 404.1529(c)(3)(i) (a claimant's "daily activities" are relevant when considering the limiting effects of pain and other symptoms).

Further, at the end of Step Four, the ALJ gave her overall view of the record, in relevant part, as follows:

> The undersigned has fully considered the claimant's subjective reports of musculoskeletal symptoms between her alleged onset date of disability and Title II insured expiration date, and the undersigned acknowledges the blend of normal and abnormal examination findings

---

[21] Barfield also argues that her subjective testimony is supported by the opinions of Dr. Wiggins, but as explained above, she has failed to show that the ALJ erred in finding Dr. Wiggins's opinions to be unpersuasive.

over the course of the period for consideration. A review of the record, however, failed to suggest that the claimant experienced ongoing, substantially abnormal examination findings that would be consistent with an individual experiencing disabling functional limitations. While diagnostic imaging illustrated abnormalities, the undersigned finds that diagnostic imaging of record was not indicative of impairments that would produce disabling functional limitations. Additionally, there was no evidence of the claimant's recurrent presentations to the emergency room for exacerbations of pain or other related symptoms. The undersigned emphasizes that surgical intervention was not recommended and notes that a spinal cord stimulator was not approved by the worker's compensation carrier … The record documented the claimant's placement on various medications in an attempt to alleviate symptomatology, and she reported at least partial benefit from those medications. According to the current record, the claimant was not observed to have ongoing neurologic deficits in the upper or lower extremities, such as reflex and sensory abnormalities, motor incoordination, or significant decrease in muscle strength. Further, no muscle atrophy, considerably limited range of motion, or persistent and significant spasm was documented in the record.

(Doc. 12, PageID.82). The undersigned finds this view of the record to be reasonable, and considered with Barfield's repeated admissions that she could still perform activities of daily living in spite of her pain, the undersigned concludes that substantial evidence supports the ALJ's finding that Barfield could still perform semi-skilled work, and the ALJ's rejection of her subjective complaints to the extent they claimed otherwise.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Barfield's application for benefits is due to be **AFFIRMED**.

## V.  *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the

Commissioner's final decision denying Barfield's April 10, 2018 DIB application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately hereafter in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 30th day of March 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**